# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| ROBBIE LARANCE WILLIAMS | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:14cv756 |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

On September 12, 2014, Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Commissioner's final decision is **AFFIRMED** and the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income on December 15, 2011, alleging a disability onset date of September 20, 2000. The applications were denied on March 28, 2012, and again on reconsideration on June 4, 2012. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). An ALJ conducted a video hearing on April 30, 2013, and issued a decision on June 26, 2013, concluding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act") through December 31, 2005, the date last insured, but has been disabled under section 1614(a)(3)(A) beginning on December 15, 2011. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review

1

on August 27, 2014. As a result, the ALJ's decision became that of the Commissioner. Plaintiff filed this lawsuit on September 12, 2014, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391,

392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a

plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his June 26, 2013 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR § 404.1571 *et seq*. and 416.971 *et seq*.).

3. Prior to December 31, 2005, the claimant's date last insured for eligibility for Title II benefits, there is no evidence of medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR § 404.1520(c) and 416.920(c)).

4. Beginning on December 15, 2011, the medical record supports a finding that the claimant has the severe impairments of hypertension, diabetes mellitus, neuropathy, lumbar disc disease, trouble gripping with right hand, and knot of right shoulder. (20 CFR 404.1520(c) and 416.920(c)).

5. Since December 15, 2011, the claimant has not had an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that since December 15, 2011, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967. The claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently. He can stand and walk for 2 hours during an 8-hour workday. The claimant can sit for 6 hours of an 8-hour workday. The claimant should avoid climbing, ladders, ropes, or scaffolds. The claimant should not crawl. He should avoid being exposed to vibrations, and hazardous machines. The claimant can perform handling and fingering with his right hand at the occasional level.

7. Since December 15, 2011, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was an individual closely approaching advanced age on December 15, 2011, the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

11. Since December 15, 2011, considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566), 416.960(c), and 416.966).

12. The claimant was not disabled prior to December 15, 2011 (20 CFR 404.1520(c) and 416.920(c) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## ADMINISTRATIVE RECORD

Plaintiff testified at his hearing before the ALJ on April 30, 2013. Plaintiff testified that he is married and does not have any minor children. He drives two or three days per week and, at that time, had been using a walker for approximately one year. Plaintiff finished high school and worked in the military. More recently, he worked at Tyler Pipe and in a steel mill.

Plaintiff testified that he has not worked since 2000 because he injured his back and he has a hand syndrome in his right hand. Plaintiff is right-handed and three of his fingers will not fold together. Plaintiff stated that he was working with the VA to get approval for back surgery. He testified that he has diabetes and does not have feeling in his feet. Plaintiff stated that he had difficulty obtaining medical care because he was incarcerated for ten years. He stated that he went to prison in April 2001 and he was released in November 2011. Plaintiff testified that he

now sees a psychiatrist at the VA for depression and anxiety and he sees someone at the VA for his eyesight.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff, proceeding *pro se*, does not identify any specific issues for review. Plaintiff asserts that he is unable to work because of an injury. Plaintiff states that he has problems with a nerve condition in both hands, an injury to his left arm, his back, his left knee and depression and anxiety.

Plaintiff's brief does not dispute that his last date insured for eligibility for disability benefits is December 31, 2005. The ALJ concluded that there were no objective medical signs or laboratory findings in the record to substantiate a medically determinable impairment prior to December 31, 2005. Plaintiff was referred to NeuroCare Network on December 5, 2000 following a work related injury that occurred on September 20, 2000. Plaintiff reported back and leg pain with the right worse than the left. Plaintiff's neurological examination showed normal sensory exam to pinprick and light touch in bilateral lower extremities and his motor exam showed 5/5 strength in the bilateral lower extremities. Plaintiff had negative straight leg raises, Thomas test, and Faber's on the right. Faber's test was positive on the left. Plaintiff expressed some pain on internal and external rotation of the hips. Dr. Michaels reviewed an MRI from November 2, 2000 that demonstrated some mild canal stenosis and bilateral foraminal stenosis at L4-5 secondary to broad-based disc protrusion. On January 19, 2001, Plaintiff reported a 50% reduction in pain following lumbar epidural steroid injections. Plaintiff reported worsened pain on February 16, 2001 and Dr. Michaels scheduled Plaintiff for bilateral L3–4, 4–5, L5–S1 facet blocks.

Plaintiff was seen by Dr. William Adams on February 14, 2001 for an evaluation of right hand ischemia. Dr. Adams scheduled Plaintiff for an arteriogram and determined that Plaintiff had ulnar artery occlusion and emboli to his right hand, also referred to as hypo-thenar hammer syndrome. On March 15, 2001, Dr. Adams performed a proper digital sympathectomy of the right hand and excision of ulnar artery of the right hand. Six days later, Plaintiff's incisions were healing well and he had no complaints. There are no other medical records submitted for the time period between March 2001 and December 31, 2005. Plaintiff does not identify any error in the ALJ's finding concerning his lack of a medically determinable impairment prior to December 31, 2005.

The ALJ determined, however, for purposes of supplemental security income benefits that Plaintiff has the severe impairments of hypertension, diabetes mellitus, neuropathy, lumbar disc disease, trouble gripping with right hand, and knot of the right shoulder beginning on December 15, 2011. Plaintiff does not challenge that finding in his brief. The ALJ's decision concludes that there are no jobs existing in significant numbers in the national economy that Plaintiff could perform since December 15, 2011. The ALJ expressly held that, pursuant to 20 CFR 404.1520(g) and 416.920(g), Plaintiff became disabled for purposes of supplemental security income benefits on December 15, 2011 and has continued to be disabled through the date of the decision.

Plaintiff's brief does not identify any error in the ALJ's finding that his disability started on December 15, 2011, shortly after he was released from prison, for purposes of his supplemental security income application. While incarcerated, Plaintiff received medical care from Correctional Managed Care. The medical evidence only contains records from 2010 and 2011 from Correctional Managed Care. On April 26, 2010, Plaintiff complained of

8

hypertension, diabetes and hyperlipidemia. His blood pressure was 135/98. The clinic note states that Plaintiff's upper extremities were normal and his feet were within normal limits. There were no significant findings. On August 24, 2010, Plaintiff complained of pain and numbness in his left hand. On examination, Plaintiff had no edema or deformity in the hand and he had good range of motion in all digits. A cervical spine examination on September 14, 2010 showed normal alignment of the cervical vertebrae, no evidence of fracture and well preserved intervertebral disc spaces. Plaintiff was seen again for his spine on February 5, 2011 and he had a spine X-Ray. Plaintiff's blood pressure at that visit was 167/93. An examination on March 9, 2011 revealed negative bilateral straight leg raises and deep tendon reflexes of 1+/4+ position and alignment bilaterally. A large lipomatous mass was noted on Plaintiff's right arm. A clinic note on March 25, 2011 states that Plaintiff's hypertension and diabetes were not well controlled.

After his release from prison, Plaintiff received care at Total Health Care Center on December 5, 2011. At that visit, Plaintiff's blood pressure was 155/98 and he was diagnosed with coronary artery disease, essential hypertension, edema, mixed hyperlipoprotelnemia, Type 2 diabetes mellitus, polyneuropathy and chronic pain syndrome. On that date, the clinic note states that Plaintiff's diabetes was not well controlled. Plaintiff received treatment and, at a subsequent visit on December 19, 2011, the clinic note states that Plaintiff's diabetes was controlled and his blood pressure was down to 125/82.

The remainder of the medical records post-date the disability date of December 15, 2011 determined by the ALJ. The records submitted by Plaintiff after his hearing and in this lawsuit also post-date the December 15, 2011 disability date and do not relate to whether Plaintiff was disabled prior to that date. Plaintiff's brief does not seem to account for the fact that the ALJ did find him to be disabled as of December 15, 2011. The burden of proof is on Plaintiff to

establish that he had a severe impairment prior to that date. *Anderson v. Sullivan*, 887 F.2d at 632–33. Here, Plaintiff has not proven and the medical records do not show a severe impairment prior to December 15, 2011. To the extent Plaintiff asserts that he was disabled prior to that date—which is not made clear in his brief—the objective medical evidence does not support that claim.

In this case, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed. It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this**
**Sep 28, 2016**

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE